******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# L. L. ET AL. *v.* NEWELL BRANDS, INC., ET AL.
## (SC 21005)

McDonald, D'Auria, Ecker, Alexander and Dannehy, Js.

*Syllabus*

The plaintiffs sought to recover from the defendants in federal court for, inter alia, the defendants' alleged violations of the Connecticut Product Liability Act (§ 52-572m et seq.). The United States District Court for the District of Connecticut certified to this court, pursuant to statute (§ 51-199b (d)), a question of law concerning whether Connecticut law recognizes a parent's claim for loss of filial consortium of a minor child who was severely injured as result of a defendant's allegedly tortious conduct. *Held*:

This court concluded that Connecticut law does not recognize a cause of action for loss of filial consortium.

Although this court has recognized causes of action for loss of spousal consortium and loss of parental consortium, the justifications for imposing liability for third-party emotional injuries in those circumstances, namely, the mutual dependence and reliance between spouses and a child's dependence on his or her parents, did not support the recognition of a cause of action for loss of filial consortium, as the relational interests at issue were sufficiently distinguishable.

The injury that is experienced by a parent whose child sustains a severe and potentially disabling injury is a form of emotional distress, rather than the type of relational loss or loss of society for which the tort of loss of consortium affords a remedy.

Although a substantial minority of other jurisdictions allow the parent of an injured child to recover for loss of filial consortium under certain circumstances, this court found more persuasive the reasoning of those jurisdictions that have recognized a clear conceptual and practical distinction between parental consortium and filial consortium, which militated against this court's recognition of a common-law cause of action for loss of filial consortium.

(*One justice concurring separately*; *one justice dissenting*)

Argued September 19, 2024—officially released February 11, 2025

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged violation of the Connecticut Product Liability Act, and for other relief, brought to the United States District Court for the District of Connecticut,

where the court, *Shea, J.*, certified a question of law to this court concerning whether Connecticut recognizes a parent's claim for loss of filial consortium when the minor child suffered severe injuries as a result of the defendants' allegedly tortious conduct.

*James J. Healy*, with whom were *Allison D. White*, *Kenneth J. Krayeske* and, on the brief, *Peter C. Bowman*, for the appellants (plaintiff Justin Lapointe et al.).

*Rachel M. Bradford*, with whom were *Christopher M. Vossler* and *Katharine L. Walker*, for the appellees (named defendant et al.).

*Linda L. Morkan*, with whom were *Sabrina M. Galli* and, on the brief, *Jeffrey J. White*, for the appellee (defendant Haier US Appliance Solutions, Inc.).

*Carey B. Reilly* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Edward W. Mayer, Jr.*, *Hannah L. Lauer*, *Glenn B. Coffin, Jr.*, and *Kelcie B. Reid* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

ALEXANDER, J. Over the past one-half century, this court has twice recognized a cause of action for loss of consortium. In *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 408 A.2d 260 (1979), this court recognized a claim for the loss of the consortium of an injured spouse; id., 496; defined to encompass both the tangible elements of consortium, such as a spouse's household services and financial support, and the intangible elements, including a spouse's "affection, society, [and] companionship . . . ." (Internal quotation marks omitted.) Id., 487. Thirty-six years later, in *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015), this court further extended a tortfeasor's liability to a minor

child's loss of the consortium of an injured parent. Id., 57. The sole issue in this case, which comes to us on certification from the United States District Court for the District of Connecticut, is whether we should further expand the scope of liability by recognizing a parent's claim for the loss of the consortium of an injured minor child. We decline to do so.

The following relevant facts and procedural history are drawn largely from the District Court's certification order. Where appropriate, we have supplemented that summary with additional allegations from the underlying complaint; see, e.g., *Gerrity* v. *R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 123, 818 A.2d 769 (2003); which we must accept as true for purposes of addressing the certified question. See, e.g., *Francis* v. *Kings Park Manor, Inc.*, 992 F.3d 67, 71 (2d Cir. 2021).

On June 23, 2020, the plaintiff Mary Lapointe (Mary) strapped her infant daughter, the plaintiff L. L.,[1] into a Graco car seat, placed the car seat on the kitchen counter of her Colchester home, next to an electric range stove, and left the room. While Mary was away from the kitchen, the car seat caught fire, as a result of the faulty design or production of both the car seat and the stove. L. L.'s aunt, the plaintiff Kayleigh Lapointe (Kayleigh), discovered the fire and rescued L. L. by removing her from the burning car seat. L. L. suffered severe burns and injuries to her entire body.

Mary, Kayleigh, L. L.'s father, the plaintiff Justin Lapointe (Justin), and L. L., through Justin as her next friend, brought the underlying action in the District Court against the defendants, Newell Brands Inc. (Newell), the manufacturer of the car seat; Target Stores, Inc. (Target), the retail seller of the car seat; Haier US Appliance Solutions, Inc. (Haier), which placed the

---

[1] In accordance with the District Court's certification order, we refer to the minor plaintiff by the initials L. L.

electric range into the stream of commerce; and General Electric Company.[2] They claimed violations of the Connecticut Product Liability Act (CPLA), General Statutes § 52-572m et seq., sounding in defective product design, manufacturing defect, breach of warranty, failure to warn, and recklessness. They also brought claims alleging violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., which the District Court subsequently dismissed. In addition, Mary and Justin brought claims for the loss of L. L.'s consortium, alleging that, due to L. L.'s injuries, they "lost the consortium, society, care and companionship of [their] daughter, and will continue to suffer such a loss in the future."

The defendants moved to dismiss, inter alia, the loss of consortium claims, contending that Connecticut law does not recognize claims for loss of filial consortium. The District Court denied, without prejudice, the defendants' motions as to the loss of consortium claims and, pursuant to General Statutes § 51-199b (d), certified the following question of law to this court: "Does Connecticut law recognize a parent's claim for loss of filial consortium in his or her child, who allegedly suffered severe, but nonfatal, injuries because of the defendants' tortious conduct?"[3]

The plaintiffs[4] acknowledge that neither this court nor the Appellate Court has recognized a cause of action for loss of filial consortium. They contend, however,

---

[2] The District Court dismissed the claims against General Electric Company. See *L. L.* v. *Newell Brands, Inc.*, Docket No. 3:23-cv-00803-MPS, 2024 WL 245023, *2 (D. Conn. January 23, 2024). For convenience, we hereinafter refer to Newell, Target, and Haier, collectively, as the defendants.

[3] In addition to the briefs filed by the parties, the Connecticut Trial Lawyers Association has filed a brief in support of the plaintiffs as amicus curiae, whereas the Connecticut Defense Lawyers Association has filed a brief in support of the defendants as amicus curiae.

[4] Because only the loss of consortium claims are at issue, hereinafter, all references to the plaintiffs are to Mary and Justin.

that recognition of such a cause of action is compelled by our decision in *Campos*. They argue that, once this court recognized claims for loss of parental consortium in *Campos*, loss of filial consortium is "a natural complement" and "[t]he logical next step . . . ." (Internal quotation marks omitted.) Although the injuries suffered by L. L. in the present case are tragic, we are not persuaded to recognize a cause of action for loss of filial consortium. Although the principles articulated in *Campos* continue to control this area of the law, the relational interests at issue in the present case are sufficiently distinguishable from those at issue in *Campos* as to not require the imposition of liability for third-party emotional injuries under a loss of consortium theory.

Implicit in *Campos* is the recognition that minor children are dependent on their parents for the provision of all their basic needs. See *Campos* v. *Coleman*, supra, 319 Conn. 48 (parent's failure to provide "love, care, companionship and guidance to minor children" is "uniquely harmful" (internal quotation marks omitted)). In *Campos*, we indicated that a child's recovery for loss of parental consortium would hinge on the extent to which the parent helps to meet the child's basic needs; id., 49 n.8; and, relying on that principle, we left open the possibility that a loss of parental consortium claim could lie for a plaintiff who, for reasons of disability, remains "dependent on parental care" past the age of majority. Id., 58 n.18.

Similarly, although spouses are legally independent adults, we observed in *Hopson* that mutual dependence and reliance traditionally have been among the defining features of "the variety of intangible relations [that] exist between spouses living together in marriage." *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 487; see also *Mueller* v. *Tepler*, 312 Conn. 631, 647, 95 A.3d 1011 (2014). Once again, this concept of dependence

is important both because it provides a clear dividing line between those relationships for which we do and do not recognize a cause of action for loss of consortium, and because it encapsulates the nature of the loss and the rationale for recovery. It is precisely because minor children are fully reliant on their parents, and spouses allow themselves to become mutually reliant in so many ways, that the benefits of holding a tortfeasor liable for loss of spousal and parental consortium are justified.

In arguing that this court should now recognize a cause of action for loss of filial consortium, the plaintiffs focus on the importance of the parent-child relationship and the seriousness of an injury to that bond. They contend that the factors that counseled in favor of compensating a loss of parental consortium in *Campos* necessarily weigh in favor for compensating a loss of filial consortium. The two causes of action, they submit, are flip sides of the same coin.

Regardless of whether the plaintiffs' claim in the present case is in fact the proverbial "flip side," which is itself debatable, we do not find the analogy apt. Although the ideal marriage might be one that is equal and reciprocal in all important respects, that is not true of the parent-child relationship. The parent does not obey the child; nor does the child supervise the parent. See, e.g., *Roberts* v. *Williamson*, 111 S.W.3d 113, 119 (Tex. 2003).

The fact that the present matter involves the extreme case, in which the parental and filial roles are most dissimilar, brings into sharp relief why few, if any, of the considerations that formed the basis of this court's decision in *Campos* support the recognition of a cause of action for loss of filial consortium. See *Campos* v. *Coleman*, supra, 319 Conn. 43. Parents are not dependent on their child—certainly not an infant child—for

their financial support, household assistance, or emotional solace.

In this respect, we are persuaded by the reasoning of the Texas Supreme Court in *Roberts* v. *Williamson*, supra, 111 S.W.3d 113. In that case, the court concluded that, although the parent-child relationship deserves special protection, as reflected in that court's recognition of a cause of action for loss of parental consortium, "the parent-child relationship is not reciprocal like husband and wife and that the child is the party to the relationship who needs special protection." Id., 118. The court explained: "Although parents customarily enjoy the consortium of their children, in the ordinary course of events a parent does not depend on a child's companionship, love, support, guidance, and nurture in the same way and to the same degree that a husband depends on his wife, a wife depends on her husband, or a minor or disabled adult child depends on his or her parent. Of course, it is true that such dependency may exist in a particular situation, but it is not intrinsic to the parent-child relationship as is a minor child's dependency on his or her parents and as is each spouse's dependency on the other spouse." (Emphasis omitted; internal quotation marks omitted.) Id., 117. "In our society the minor child requires his or her parent's nurturing, guidance, and supervision. The child is uniquely dependent [on] the parent for his or her socialization, that maturation process [that] turns a helpless infant into an independent, productive, responsible human being who has an opportunity to be a valuable, contributing member of our society. Without question, the child's relational interest with the parent is characterized by dependence. In contrast, the parent's relational interest with the child is not. In a real sense, the child is becoming, and the parent has become. Thus, the parent's loss of an injured child's consortium is different in kind from the child's loss of an injured parent's con-

sortium." (Internal quotation marks omitted.) Id., 117–18. We agree with this reasoning and conclude that the justifications we relied on in *Hopson* and *Campos* do not warrant recognizing a cause of action for loss of filial consortium.

The emotional pain that is experienced by a parent whose child sustains a severe and potentially disabling injury is unimaginably devastating. However, the suffering for which the plaintiffs seek compensation is a form of emotional distress, rather than the type of relational loss or loss of society for which the tort of loss of consortium affords a remedy. This court has made clear that the two types of injuries are separate and distinct.[5] See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 60 n.20; see also *Pierce* v. *Casas Adobes Baptist Church*, 162 Ariz. 269, 272, 782 P.2d 1162 (1989). This distinction informs our decision not to recognize a common-law cause of action for loss of filial consortium.

The plaintiffs argue that persuasive authority from other states supports recognition of loss of filial consortium claims by the common law. They contend that, of the twenty-six states that have considered the issue, a clear majority—sixteen—have recognized such claims.

It is true that a substantial minority of other states allow the parent of an injured child to recover for loss of filial consortium under at least some circumstances. Of those states, however, only seven have recognized

---

[5] We acknowledge that this court has at times repeated language from a New York decision that appears to blur the lines between emotional distress and loss of consortium. See *Millington* v. *Southeastern Elevator Co.*, 22 N.Y.2d 498, 503, 239 N.E.2d 897, 293 N.Y.S.2d 305 (1968) (describing "the mental and emotional anguish caused by seeing a healthy, loving companionable mate turned into a shell of a person"); see also, e.g., *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 493 (referencing relevant language in *Millington*). We take this opportunity to clarify that, as other courts have recognized, however painful it may be to witness the suffering of a disabled child, that child's disability does not impair the *relational* value of parenting. See, e.g., *Dralle* v. *Ruder*, 124 Ill. 2d 61, 70–71, 529 N.E.2d 209 (1988).

the cause of action solely pursuant to their common-law authority.[6] In eleven other states, the cause of action was either enacted expressly by the legislature[7] (in some instances after the state high court had held that there was no common-law cause of action) or recognized judicially as arising by necessary implication from a wrongful death or related statute.[8] At the same time, the courts of thirteen additional states and the District of Columbia have expressly declined to adopt any common-law cause of action for loss of filial consortium,[9]

[6] See *Pierce* v. *Casas Adobes Baptist Church*, supra, 162 Ariz. 272–73; *United States* v. *Dempsey*, 635 So. 2d 961, 962–65 (Fla. 1994); *Fernandez* v. *Walgreen Hastings Co.*, 126 N.M. 263, 271–73, 968 P.2d 774 (1998); *First Trust Co. of North Dakota* v. *Scheels Hardware & Sports Shop, Inc.*, 429 N.W.2d 5, 9–11 (N.D. 1988); *Gallimore* v. *Children's Hospital Medical Center*, 67 Ohio St. 3d 244, 251, 617 N.E.2d 1052 (1993); *Benda* v. *Roman Catholic Bishop of Salt Lake City*, 384 P.3d 207, 209, 212–13 (Utah 2016); *Shockley* v. *Prier*, 66 Wis. 2d 394, 401–404, 225 N.W.2d 495 (1975).

[7] See Iowa Code Ann. § 613.15A (West 2018); Mass. Ann. Laws c. 231, § 85X (LexisNexis 2009); Okla. Stat. Ann. tit. 12, § 1055 (West 2015); R.I. Gen. Laws § 9-1-41 (c) (2012); Vt. Stat. Ann. tit. 14, § 1492 (b) (Cum. Supp. 2024); Wn. Rev. Code Ann. § 4.24.010 (West Cum. Supp. 2025); see also *Gillispie* v. *Beta Construction Co.*, 842 P.2d 1272, 1273–74 (Alaska 1992) (construing § 09.15.010 of Alaska Statutes); *Hayward* v. *Yost*, 72 Idaho 415, 425, 242 P.2d 971 (1952) (construing §§ 5-310 and 5-311 of Idaho Code).

We have included in this category states that have recognized a cause of action for loss of filial consortium arising from the wrongful death of a child but have not resolved the question of whether there is a cause of action for parents of an injured child.

[8] See *Masaki* v. *General Motors Corp.*, 71 Haw. 1, 19, 780 P.2d 566 (1989) (construing § 663-3 of Hawaii Revised Statutes); *Worsham* v. *Walker*, 498 So. 2d 260, 266 (La. App.1986) (construing article 2315 (B) of Louisiana Civil Code), writ denied, 500 So. 2d 423 (La. 1987), and writ denied, 500 So. 2d 424 (La. 1987); *Dawson* v. *Hill & Hill Truck Lines*, 206 Mont. 325, 333, 671 P.2d 589 (1983) (construing § 27-1-512 of Montana Code Annotated).

We disagree with the dissent that the courts of these three states are best understood as having imposed liability for loss of filial consortium pursuant to their common-law authority.

[9] See *Cardinale* v. *La Petite Academy, Inc.*, 207 F. Supp. 2d 1158, 1161 (D. Nev. 2002); *Baxter* v. *Superior Court*, 19 Cal. 3d 461, 466, 563 P.2d 871, 138 Cal. Rptr. 315 (1977); *Elgin* v. *Bartlett*, 994 P.2d 411, 420 (Colo. 1999), overruled in part on other grounds by *Rudnicki* v. *Bianco*, 501 P.3d 776 (Colo. 2021); *Wheeler ex rel. Neidlinger* v. *Drummond*, Docket No. 88C-OC-13, 1990 WL 58253, *2 (Del. Super. April 17, 1990); *Parker* v. *Martin*,

and eighteen others continue to follow the traditional common-law approach, allowing recovery for the documented value of a child's earnings and domestic services and the costs of any medical expenses, but not for the intangible elements of the parent-child relationship.[10]

The parties largely agree on the classifications of these other jurisdictions, but they draw very different lessons from them. The plaintiffs note that more than

905 A.2d 756, 765 (D.C. App. 2006); *Bayless* v. *Boyer*, 180 S.W.3d 439, 449 (Ky. 2005); *Dralle* v. *Ruder*, 124 Ill. 2d 61, 68–69, 529 N.E.2d 209 (1988); *Sizemore* v. *Smock*, 430 Mich. 283, 299, 422 N.W.2d 666 (1988); *Butler* v. *Chrestman*, 264 So. 2d 812, 816–17 (Miss. 1972); *Powell* v. *American Motors Corp.*, 834 S.W.2d 184, 191 (Mo. 1992); *Doe* v. *Greenville County School District*, 375 S.C. 63, 69, 651 S.E.2d 305 (2007); *Rains* v. *Bend of the River*, 124 S.W.3d 580, 598 (Tenn. App. 2003); *Roberts* v. *Williamson*, supra, 111 S.W.3d 119-20; *Gates ex rel. Gates* v. *Richardson*, 719 P.2d 193, 201 (Wyo. 1986).

We note that, in several of these states, state law allows recovery for loss of filial consortium arising from the wrongful death, but not injury, of a minor child.

[10] See *J.V. ex rel. Valdez* v. *Macy's, Inc.*, Docket No. 13-5957 (KSH) (CLW), 2014 WL 4896423, *4 (D.N.J. September 30, 2014); *Ms. K ex rel. S.B.* v. *South Portland*, 407 F. Supp. 2d 290, 299 (D. Me. 2006); *Santoro ex rel. Santoro* v. *Donnelly*, 340 F. Supp. 2d 464, 492–93 (S.D.N.Y. 2004); *Smith* v. *Richardson*, 277 Ala. 389, 394, 171 So. 2d 96 (1965); *Earl* v. *Mosler Safe Co.*, 291 Ark. 276, 279, 724 S.W.2d 174 (1987); *Cotton States Mutual Ins. Co.* v. *Crosby*, 149 Ga. App. 450, 452, 254 S.E.2d 485, rev'd in part on other grounds, 244 Ga. 456, 260 S.E.2d 860 (1979); *Forte* v. *Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 802–803 (Ind. 2001); *Schmeck* v. *Shawnee*, 231 Kan. 588, 594, 647 P.2d 1263 (1982); *Michaels* v. *Nemethvargo*, 82 Md. App. 294, 300, 571 A.2d 850 (1990); *Father A* v. *Moran*, 469 N.W.2d 503, 506 (Minn. App. 1991); *Connelly* v. *Omaha*, 284 Neb. 131, 150, 816 N.W.2d 742 (2012); *Siciliano* v. *Capitol City Shows, Inc.*, 124 N.H. 719, 724, 475 A.2d 19 (1984); *Bolkhir* v. *North Carolina State University*, 321 N.C. 706, 713, 365 S.E.2d 898 (1988); *Beerbower* v. *State ex rel. Oregon Health Sciences University*, 85 Or. App. 330, 332–35, 736 P.2d 596, review denied, 303 Or. 699, 740 P.2d 1212 (1987); *Brower ex rel. Brower* v. *Philadelphia*, 557 A.2d 48, 50–51 (Pa. Commw. 1989), appeal denied, 525 Pa. 604, 575 A.2d 569 (1990); *In re Certification of Questions of Law from the United States Court of Appeals for the Eighth Circuit*, 544 N.W.2d 183, 192–93 (S.D. 1996); *Virginia Farm Bureau Mutual Ins. Co.* v. *Frazier*, 247 Va. 172, 174 n.*, 440 S.E.2d 898 (1994); *State ex rel. Packard* v. *Perry*, 221 W. Va. 526, 539, 655 S.E.2d 548 (2007).

thirty states recognize some form of a loss of filial consortium claim (whether for any type of losses or only for loss of a child's services and income) on some basis (statutory or common law). The defendants counter that only a handful of states have done what the plaintiffs are inviting this court to do in the present case, namely, to recognize a common-law cause of action for loss of filial consortium, under which a parent can recover for solely intangible losses.

There is merit to both positions. Certainly, the fact that so many states allow recovery, on whatever basis, indicates that loss of filial consortium claims are neither well outside the national mainstream nor prohibitively costly to litigate. The plaintiffs also note that, of the approximately twenty other states that, like Connecticut, recognize a cause of action for loss of parental consortium, most have also adopted a cause of action for loss of filial consortium. Nevertheless, we find more persuasive the reasoning of those states that have recognized a clear conceptual and practical distinction between parental consortium and filial consortium that militates against recognizing a common-law cause of action for loss of the latter. Indeed, most of the states that recognize claims limited to the loss of a child's services and income do so under a different label and continue to purport not to recognize loss of filial consortium claims.[11]

Finally, the dissent contends that the time is ripe to recognize a cause of action for loss of filial consortium because "[t]he trend is toward recognition of such

---

[11] See, e.g., *Santoro ex rel. Santoro* v. *Donnelly*, 340 F. Supp. 2d 464, 492–93 (S.D.N.Y. 2004); *Smith* v. *Richardson*, 277 Ala. 389, 394, 171 So. 2d 96 (1965); *Cotton States Mutual Ins. Co.* v. *Crosby*, 149 Ga. App. 450, 452, 254 S.E.2d 485, rev'd in part on other grounds, 244 Ga. 456, 260 S.E.2d 860 (1979); *Father A* v. *Moran*, 469 N.W.2d 503, 506 (Minn. App. 1991); *Siciliano* v. *Capitol City Shows, Inc.*, 124 N.H. 719, 724, 475 A.2d 19 (1984); *Brower ex rel. Brower* v. *Philadelphia*, 557 A.2d 48, 50–51 (Pa. Commw. 1989), appeal denied, 525 Pa. 604, 575 A.2d 569 (1990).

claims, with the vast majority occurring after 1987." (Internal quotation marks omitted.) As authority for this proposition, the dissent relies on Tentative Draft No. 1 of the Restatement (Third) of Torts, Concluding Provisions § 48 B, comment (b), in which the drafters recommended changing course and recognizing a cause of action for loss of filial consortium.[12] We are not persuaded.

Although it is true that a handful of state courts recognized the cause of action in the 1980s and 1990s, that trend, such as it was, has largely run its course. In the past one-quarter century, only one more state court has embraced the plaintiffs' position. See *Benda* v. *Roman Catholic Bishop of Salt Lake City*, 384 P.3d 207, 209, 212–13 (Utah 2016).[13] During that same time period, the courts of at least ten other states have declined the opportunity to do so. The drafters of the proposed new rule acknowledge that their approach remains a minority position; see Restatement (Third), supra, § 48 B, comment (b), p. 297; and they fail to offer any rationale that persuades us of a need to adopt the rule at the present time.[14]

---

[12] Section 703 of the Restatement (Second) of Torts permits claims by parents for injuries to their unemancipated children but limits parents' recovery to the lost earning capacity of the child and any medical expenses that the parents incurred. 3 Restatement (Second), Torts § 703, p. 510 (1977). The proposed new rule would permit parents of an injured child to also recover for the loss of the child's society, defined to include "loss of affection, comfort, companionship, love, and support, and loss of services." Restatement (Third), Torts, Concluding Provisions § 48 B, p. 297 (Tentative Draft No. 1, 2022).

[13] Although Montana had previously recognized a cause of action for loss of filial consortium arising from wrongful death, in *Hern* v. *Safeco Ins. Co. of Illinois*, 329 Mont. 347, 125 P.3d 597 (2005), the Montana Supreme Court extended the cause of action to injuries to *adult* children on whom the parents are extraordinarily dependent. See id., 362–63.

[14] We recognize that, given the comprehensive review process of the American Law Institute, and the numerous entities within that body that participate in the production of the Restatements of the law, a tentative draft of a Restatement may well have significant persuasive value in our assessment of a particular point of law. Indeed, the American Law Institute states

The certified question is answered in the negative.

No costs shall be taxed in this court to any party.

In this opinion D'AURIA, ECKER and DANNEHY, Js., concurred.

––––––––––––––––––––

that the tentative draft "represent[s] [its] position until the official text is published." (Internal quotation marks omitted.) *HELG Administrative Services, LLC* v. *Dept. of Health*, 154 Haw. 228, 236 n.8, 549 P.3d 313 (2024); see *Varlack* v. *SWC Caribbean, Inc.*, 550 F.2d 171, 180 (3d Cir. 1977) (concluding that Virgin Islands statute referring to Restatements "as an expression of 'the rules of common law' " does not "[contemplate] strict adherence to old Restatements which no longer accurately summarize the common law" because "the weight of authority now lies behind the position in the [t]entative [d]raft of the [s]econd Restatement, rather than that contained in the [f]irst Restatement, which dates from 1939" (emphasis omitted)).